IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JUANTISA HUGHES,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **Civil Action Number:** |
| ) | **1:16-cv-01912-CAP-JFK** |
| **FULTON COUNTY, GEORGIA,** ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT AND FOR EQUITABLE TOLLING**

COMES NOW Plaintiff Juantisa Hughes ("Plaintiff") by and through her undersigned counsel of record, and files her Reply in Support of Motion for Leave to Amend Complaint and for Equitable Tolling, as follows:

**I. Introduction.**

In Defendant's Response, Fulton County ("Defendant") argues that "Plaintiff's proposed Section 1983 claims and state law claims against Pitts are futile" and that "Plaintiff's proposed amendment would prejudice Defendant, who has expended significant time responding to Plaintiff's [Complaint]." [Doc. 44, p. 2.] Defendant also asserts on p.3:

> Plaintiff contends that she did not have occasion to learn of Pitts' true employment status until July 7, 2017, two weeks after Fulton County filed its Answer. (See Doc. 42-1, p. 4). However, Plaintiff's contention is unavailing because Pitts' status is a matter controlled by statute – not by Fulton County's Answer. Furthermore, Plaintiff fails to offer any reason why she could not have brought her proposed Section 1983 claims in the original Complaint filed more than one year ago or in the First Amended Complaint for that matter.

**A. <u>Plaintiff Did Not Engage in Bad Faith or a Lack of Diligence, and Any Undue Delay Has Been Caused by Defendant, Pitts and Reddick.</u>**

    **1. <u>The Employment Relationships Were Obscured.</u>**

Due to actions of Defendant, Pitts, and Charles Reddick ("Reddick"), Plaintiff's true employment status and that of Pitts and Reddick[1] were unknown to Plaintiff until July 7, 2017. Even now, Defendant's website includes a "Welcome" page describing "[t]he mission of the Office of The Public Defender" and a page entitled "Meet the Director" stating, "In 1985, Pitts became director of the Fulton County Public Defender Office," with no mention of Defendant Pitts's role or title as Circuit Public Defender. (Exhibit A.) Although Plaintiff had been aware of a name change for the office, she never had knowledge of anything suggesting that she, Reddick and/or Pitts were not employees of Defendant. Further, there was no reason why she should have, since all of her employment-related documents prepared by Fulton County representatives and by Reddick and Pitts themselves referred to Fulton County as Plaintiff's employer and to Pitts as the "Director" of the "Fulton County Public Defender's Office." (Exhibits B-F.) Pitts also routinely held himself out to the public as such, Reddick held himself out as a Fulton County employee, and the office routinely used Fulton County letterhead (Exhibits G-H.) Even as late as March 18, 2014, Defendant Pitts signed Plaintiff's Fulton County-

---

[1] As is reflected in Defendant's Response [Doc. 44, top of p. 14 and footnote 3], the identity of Reddick's employer is currently unresolved. For purposes of this Reply, Plaintiff is assuming that Reddick is employed by Pitts.

generated Separation Notice using the title "Director, Public Defender." (Exhibit I.) Based on the information provided by the EEOC in response to Plaintiff's FOIA request, Defendant did not appear to address the status of Pitts and Reddick as non-employees of Defendant in its response to the EEOC, either.[2]

### 2. Pitts's Employment Status Was Not Merely Controlled By Statute.

Defendant's Response implies that Plaintiff would have known Pitts's status had she simply read OCGA §17-12-20 *et seq*. establishing the statewide public defender system. However, this argument ignores the fact that OCGA §17-12-36 allows counties to opt out of participation in the system. As Defendant itself specified in its Answer, "[i]n September 2004, the Fulton County Board of Commissioners opted into the Statewide Public Defender System under the Georgia Public Defender Standards Council." [Doc. 32, p.8.] As such, Pitts's employment status was actually controlled by Defendant's decision to opt into the statewide system, whereupon Pitts became the Circuit Public Defender. However, if Defendant had chosen to opt out of the system, then Pitts would have continued in the position of Director of Fulton County's Office of the Public Defender which he had held since 1985. Based on the statute's "opt-out" provisions and the

---

[2] Had Fulton County addressed the status of Pitts (and/or Reddick) as non-employees in response to Plaintiff's EEOC charge, Plaintiff could have amended the charge at that time pursuant to 29 CFR §1601.12 to identify Pitts as an employer, and she could have included the claims she now proposes in the original Complaint.

information about Pitts which had been created and published by Defendant and Pitts himself, Plaintiff's conclusion that Pitts actually held the position of Director of Defendant's Office of the Public Defender (and that Reddick was employed therein) did not demonstrate bad faith, undue delay, or a lack of diligence.

### 3. The Claims Previously Asserted (and Not Asserted) by Plaintiff Were Due to the Obscurity of Pitts's Employment Status.

The proposed Second Amended Complaint includes Counts IV, V, and VI, asserting claims under Sections 1983 and 1985(3). Although Defendant asserts that "the statute of limitations would have barred her Section 1983 and 1985 claims against Fulton County even if they were brought in the original Complaint," this presumes that Plaintiff would have filed her complaint on the same date. Plaintiff's employment was terminated on March 14, 2014. Although she filed an EEOC charge alleging violations of Title VII, Plaintiff could have also filed a complaint any time before March 14, 2016 setting forth claims with no EEOC filing prerequisite. Plaintiff waited, hoping that the EEOC would choose to intervene in her case. When Plaintiff received the Notice of Right to Sue on March 11, 2016, she could have still asserted Section 1983 and/or 1985(3) claims within the statute of limitations. However, in the context of her understanding that Pitts and Reddick were Defendant's employees, she considered the following: 1) allegations under Section 1983 would essentially duplicate her allegations under Title VII; and 2) a Section 1985(3) claim would not be available to her due to the established body of

4

law on the intracorporate conspiracy doctrine. Plaintiff therefore did not rush to file.

These considerations change completely with the new revelation that Pitts is not Defendant's employee. Although Plaintiff seeks in the proposed Second Amended Complaint to assert that Defendant and Pitts were her joint employers subject to her Title VII claims, at this time there has been no definitive identification of Plaintiff's employer(s). Nonetheless, Defendant, Pitts, and Reddick were all "persons acting under color of state law" who violated Plaintiff's federally protected rights. Since Defendant or Pitts may be found not to have been the employer of Plaintiff (and thus not subject to the Title VII claims) or Reddick, Plaintiff's proposed Section 1983 claims are necessary in order to preserve Plaintiff's valid claims against Defendant, Pitts and Reddick. Moreover, the fact that Defendant and Pitts are separate entities (regardless of which one employed Reddick, particularly given the participation of Berry) eliminates applicability of the intracorporate conspiracy doctrine as a bar to Plaintiff's Section 1985(3) claim. If Plaintiff had known the true status of Pitts's employment at the time she received the Notice of Right to Sue, she would have made completely different decisions about both the date of filing and the contents of the original Complaint.

### B. **<u>Plaintiff's Proposed Amendment Will Not Prejudice Defendant.</u>**

Defendant asserts that the proposed amendment would prejudice it because it has "expended significant time responding to Plaintiff's 258 paragraph Complaint

[Doc. 1] and Plaintiff's 310 paragraph First Amended Complaint [Doc. 11]." [Doc. 44, p.2.] This assertion mischaracterizes Defendant's own actions in this matter. Plaintiff's original Complaint filed on June 9, 2016 included allegations that she was employed by Defendant in its Office of the Public Defender and that Pitts had been the Director of Fulton County's Office of the Public Defender since 1985. Defendant's only "responses" to the original Complaint were to 1) file a Motion to Stay (whereby it postponed filing an Answer), and 2) file a Partial Motion to Dismiss. Although the original Complaint alleged Defendant's Title VII liability for Pitts's actions, Defendant's Partial Motion to Dismiss did not mention that Pitts was not Defendant's employee.

Following Plaintiff's filing of the Amended Complaint, Defendant filed another Partial Motion to Dismiss. This time, Defendant not only perpetuated the idea that Pitts was its employee, but it also capitalized upon this erroneous information to support its argument that Plaintiff's allegation of a civil conspiracy between Pitts and Reddick should be dismissed due to the intracorporate conspiracy doctrine. [Doc. 17-1, p. 24.][3] Only after the Court issued its Order [Doc. 31] denying much of Defendant's second Partial Motion to Dismiss did Defendant finally file its one and only Answer in this case on June 23, 2017 – more

---

[3] Fulton County argues that its assertion of this argument was harmless error. [Doc. 44, p.13.] However, if Fulton County had revealed Pitts's employment status in its Brief in Support of Partial Motion to Dismiss filed on **October 6, 2016**, Plaintiff could have addressed these issues at that time instead of now, a year later.

than one year after Plaintiff had filed the original Complaint. This Answer marked the first time that Defendant mentioned that Pitts was not its employee. Notably, Defendant waited until after Plaintiff had used her one opportunity to file an amendment as a matter of course pursuant to FRCP 15(a)(1) before springing this new information. Having had numerous opportunities to raise the issue of Pitt's employment going all the way back to the filing of Plaintiff's EEOC charge on September 10, 2014, but having chosen to wait nearly three years to reveal this information (see footnotes 2-3), Defendant's argument that the proposed amendment would cause it prejudice is nothing short of frivolous.

### C. **Plaintiff's Claims Are Not Futile.**

#### 1. **Defendant Is Liable Under Section 1983.**

Defendant asserts that Plaintiff's proposed Second Amended Complaint fails to allege that either Pitts or Reddick had final policymaking authority for Defendant. However, Paragraph 203 of the proposed Second Amended Complaint includes the express allegation that "Defendant Pitts regularly performed the duties of the 'Appointing Authority' as described in . . . Fulton County Personnel Regulations." These include PR 1900, "Definitions," which defines "Appointing Authority":

> "Appointing Authority" or "Department Head" means the person or persons authorized by law or delegated authority to make appointments to fill positions and who is the executive head of a department directly responsible for formulating and executing policies with discretion as to actions.

Notwithstanding Defendant's argument that Pitts's "[serving] in the role of

Appointing Authority does not in itself support an inference that he had final policymaking authority for Fulton County," Defendant's own Personnel Regulations thus definitively establish Pitts as final policymaker. The proposed Second Amended Complaint also describes various responsibilities of the "Appointing Authority;" ways in which Pitts failed to meet those responsibilities; and Pitts's reliance on his power as "Appointing Authority" to take various actions against Plaintiff. Moreover, Paragraphs 279 (Count I), 297 (Count II), 323 (County IV), and 343 (Count V) each specifically alleges that "the actions of Defendant Pitts were undertaken . . .in the role 'Appointing Authority' which he had assumed and which thus constituted the actions of Defendant's final policymaker for which Defendant Fulton County is responsible."

Defendant also asserts that it can only be held liable "for the conduct of one of its officials if said official is the final authority or ultimate repository of power . . . ." [Doc. 44, p. 4.] However,

> supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy. . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor. . . knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted).

Plaintiff's allegations that Pitts had knowledge of the long history of unconstitutional conduct by Reddick; that Pitts failed to correct Reddick or stop the unconstitutional conduct from occurring; and that Pitts participated personally in unconstitutional conduct appropriately plead Defendant's supervisory responsibility.

### 2. **Plaintiff's Proposed State Law Claims Against Pitts Are Not Barred By Sovereign Immunity.**

Defendant alleges that Plaintiff's proposed state law claims against Pitts[4] are barred by the doctrine of sovereign immunity.[5] In Georgia, Art. 1, § 2, ¶ 9(e) of the Georgia Constitution provides sovereign immunity "to the state and all of its departments and agencies," except as waived by a specific act of the General Assembly. Defendant discusses the waiver of sovereign immunity included in the Georgia Tort Claims Act[6] ("GTCA") and the "discretionary function" exception to that waiver along with cases decided thereunder to argue that sovereign immunity for Pitts has not been waived. However, this argument ignores the fact that Pitts, as an individual, was not granted sovereign immunity under the Georgia Constitution

---

[4] Fulton County does not assert that Plaintiff's allegations against Reddick in Count VII (Intentional Infliction of Emotional Distress) of the proposed Second Amended Complaint are barred by either sovereign immunity or official immunity; accordingly, even if the Court finds that Plaintiff's state law claims against Pitts are barred, Fulton County's futility argument fails since Count VII would still be valid with respect to the allegations against Reddick.

[5] Where a federal right of action is asserted, it is controlled by federal law; accordingly, "the supremacy clause of the Constitution prevents us from construing the federal rule to permit a state immunity defense." *Davis v. City of Roswell*, 250 Ga. 8, 9, 295 S.E.2d 317 (1982).

[6] Title 50, Chapter 21, Article 2 of the Georgia Code.

for suits against him in his individual capacity to begin with.[7] Rather,

> citizens aggrieved by the unlawful conduct of public officers [may] seek relief against such officers in their individual capacities [and] sovereign immunity generally will pose no bar.

*Georgia Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 602 (2) (755 S.E.2d 184) (2014).

### 3. **Plaintiff's Proposed State Law Claims Against Pitts Are Not Barred By Official Immunity.**

Defendant also alleges that Plaintiff's state law claims against Pitts are barred by the doctrine of official immunity.[8] The Georgia Constitution states:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.

Georgia Constitution, Art. 1, § 2, ¶ 9(d). The Georgia Supreme Court has held that "official functions" includes both ministerial and discretionary acts and has further described the Constitutional grant of official immunity as follows:

---

[7] Plaintiff acknowledges Fulton County's observation that "there is no reference made to either Pitts' individual or official capacity in Plaintiff's proposed fraud claim." [Doc. 44, p. 8.] While Plaintiff believes that the proposed Second Amended Complaint is adequately clear that Count VIII is brought against Pitts in his individual capacity, nonetheless Plaintiff would be willing to add "in his individual capacity" or similar wording to Count VIII should the Court find it necessary to clarify Plaintiff's claim.

[8] See footnote 4.

> The doctrine of official immunity . . . provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority.

*Lathrop v. Deal*, Case No. S17A0196, Supreme Court of Georgia (June 19, 2017), quoting Gilbert *v. Richardson,* 264 Ga. 744, 752, S.E.2d 476 (1994). Georgia law thus provides that state officers and employees are subject to suit and liability for a) ministerial functions performed negligently (or with actual malice or intent to cause injury); b) discretionary functions performed with actual malice or intent to cause injury; and c) conduct which is "outside the scope of his authority," *id.,* with no limitation based on the doctrine of official immunity.

Plaintiff's state-law claims against Pitts are not barred by official immunity since proposed Counts VII and VIII allege actions by Pitts (discrimination, retaliation, fraud) which were "outside the scope of his authority." Moreover, the pleadings set forth in the Second Amended Complaint are adequate to overcome official immunity as a bar to Plaintiff's proposed state-law claims should the Court find that Pitts's actions were within the scope of his employment and either ministerial *or* discretionary.

Defendant asserts that all of Pitts's actions constituted "employment decisions" which were "by their very nature discretionary acts." [Doc. 44, p. 11.] However, "[t]he determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general

11

nature of the job, and is to be made on a case-by-case basis." *Golden v. Vickery*, 285 Ga. App. 216, 218, 645 S.E.2d 695 (2007). The proposed Second Amended Complaint includes extensive descriptions of Pitts's failure to follow established policies[9] and to execute specific tasks, both of which constitute ministerial functions under Georgia law.

> While the act of establishing a policy in the first place is discretionary, the acts of following established policies . . . are ministerial. . . [T]he execution of a specific task is characterized as ministerial even though the manner in which it is accomplished is left to the employee's discretion.

*Wanless v. Tatum,* 244 Ga. App. 882, 536 S.E.2d 308 (2000) (citations omitted). For example, Paragraphs 128-30 and 150-60 describe Pitts's determination under the Discipline Policy that Plaintiff's arrest did not warrant suspending Plaintiff, followed by his "undoing" of this determination nearly a year later in violation of the Discipline Policy. Paragraphs 198-206 describe Pitts's failure to perform his specified responsibilities under the FMLA Policy, while Paragraphs 231-49 describe Pitts's reliance on his own failure to follow the FMLA Policy as the basis for disciplining Plaintiff. Paragraphs 217-64 describe Pitts's failure to sign Plaintiff's approved timesheets, his reliance on the unsigned timesheets as the basis

---

[9] As set forth in Paragraph 21 of the proposed Second Amended Complaint, "[t]he operations of the OPD-AJC (including employment matters) continued to be regulated by the Fulton County Personnel Regulations and the requirements of various Fulton County ancillary departments (Personnel, Legal, etc.), all of which were binding on Defendant Pitts."

for disciplining Plaintiff, his overall failure to follow the Discipline Policy, and his failure to follow the direct instructions of the Grievance Committee.

Defendant's Response also inaccurately asserts that "Plaintiff does not allege that Pitts acted with actual malice or corruption." [Doc. 44, p. 11.] Should the Court find that Pitts's actions were discretionary, the proposed Second Amended Complaint nonetheless specifically alleges that Pitts acted with malice as well as with deliberate intention to do wrongful acts, notwithstanding that the specific word "malice" does not directly appear in Counts VII and VIII. In Count VII, Paragraph 359 specifies that Plaintiff's claim is based on the conduct of Pitts and Reddick "in their separate and joint actions in discriminating and retaliating against Plaintiff," "as set forth herein." This includes all factual allegations and all of the preceding Counts alleging "their separate and joint actions in discriminating and retaliating against Plaintiff," each of which includes a specific allegation of malice.[10] Moreover, Count VIII alleges that Pitts's actions constituted the intentional tort of actual fraud and the deliberate intention to do wrongful acts as set forth in the cited sections of the Georgia Code. Paragraph 365 of Count VIII further describes Pitts's deliberate actions undertaken to deceive Plaintiff.

Based on the foregoing, official immunity does not bar Plaintiff's proposed state law claims.

---

[10] See Count I at ¶203; Count II at ¶302; Count III at ¶311; Count IV at ¶¶327 and 331; Count V at ¶349; and Count VI at ¶356.

**D. <u>Plaintiff Is Entitled to Equitable Tolling</u>.**

If a defendant "is guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action," then that plaintiff is entitled to tolling until "the time of the plaintiff's discovery of the fraud." OCGA § 9-3-96. The types of fraud triggering the tolling statute include "actual fraud" and "a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence." *Hunter, MacLean, Exley & Dunn, P.C. v. Frame, et al.*, 269 Ga. 844, 507 S.E.2d 411 (1998). As set forth in OCGA §23-2-52 through 54, actual fraud may occur through misrepresentation of a material fact, suppression of a material fact which a party is under an obligation to communicate, or "[a]nything which happens without the agency or fault of the party affected by it, tending to disturb and confuse his judgment or to mislead him, of which the opposite party takes an undue advantage." While OCGA §23-2-58 describes the types of "relationships of trust and confidence" which create a duty to disclose, it

> does not attempt to comprehensively enumerate the cases wherein the relation of mutual confidence is present . . . The showing of a relationship in fact which justifies the reposing of confidence by one party in another is all the law requires. [OCGA §23-2-58] expressly goes beyond the strict fiduciary relations of the parties and states that the obligation to communicate may arise from the particular circumstances of the case.

*Cochran v. Murrah*, 235 Ga. 304, 219 S.E.2d 421 (1975) (holding that a confidential relationship existed between an employer and employee). While a plaintiff is required to exercise reasonable diligence to discover the fraud, the

14

existence of such a relationship of trust and confidence

> lessens the plaintiff's obligation to discover the fraud and also heightens the duty of the defendant to disclose what should be revealed. In cases of a confidential relationship, silence when one should speak, or failure to disclose what ought to be disclosed, is as much a fraud in law as is an actual false representation.

*Vincent v. Bunch,* 240 Ga. App. 255, 522 S.E.2d 495 (1999), citing *Brown v. Brown,* 209 Ga. 620, 621(6), 75 S.E.2d 13 (1953) (other citations omitted).

As described in Sections I A and B, *supra*, Defendant and Pitts (and Reddick) all took actions holding out Pitts (and Reddick) as Defendant's employee throughout Plaintiff's employment, in responding to Plaintiff's EEOC charges, and thereafter until Defendant filed its Answer on June 23, 2017 with the surprising news regarding Pitts's status. Likewise, Defendant and Pitts also held out Defendant as Plaintiff's sole employer with knowledge that this was not true. Whether or not the Court finds that Plaintiff had a "relationship of trust and confidence" with Defendant, Pitts, or Reddick, Plaintiff was certainly entitled to know the identity of her employer(s), a material fact which was misrepresented, suppressed, and thus deterred Plaintiff from bringing the claims Plaintiff now proposes. Accordingly, Plaintiff is entitled to equitable tolling.

## II.    Conclusion.

On the basis of the foregoing and Plaintiff's Brief, Plaintiff respectfully requests that the Court grant her Motion.

Respectfully submitted this 30th day of September, 2017.

                                          **/s/ Susan C. Atkinson**
                                          Susan C. Atkinson
                                          Georgia Bar No. 026930

ATKINSON LAW, LLC
144 Vidal Boulevard
Decatur, Georgia 30030
(404) 370-9497
(404) 377-6767 – facsimile
susan@atkinson.net
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **JUANTISA HUGHES,** )<br>　　　**Plaintiff** )<br>　 )<br>**v.** )<br>　 )<br>**FULTON COUNTY, GEORGIA,** )<br>　　　**Defendant.** )<br>　 ) | **Civil Action Number:**<br>**1:16-cv-01912-CAP-JFK** |

## CERTIFICATE OF FONT TYPE, SIZE AND SERVICE

THIS IS TO CERTIFY that on this day, I presented this document in 14 point Times New Roman font, in accordance with L.R. 5.1(C) and that I electronically filed the foregoing "**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT AND FOR EQUITABLE TOLLING**" with the Clerk of Court, using the CM/ECF System which will automatically notify all attorneys of record.

This the 30th day of September, 2017.

　　　　　　　　　　　　　　　　　　**/s/ Susan C. Atkinson**
　　　　　　　　　　　　　　　　　　Susan C. Atkinson
　　　　　　　　　　　　　　　　　　Georgia Bar No. 026930

ATKINSON LAW, LLC
144 Vidal Boulevard
Decatur, Georgia 30030
(404) 370-9497
(404) 377-6767 – facsimile
susan@atkinson.net
Attorney for Plaintiff